MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 128
Docket:      Ken-18-385
Argued:      May 7, 2019
Decided:     August 6, 2019
Revised:     November 21, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM,* and HUMPHREY, JJ.

STATE OF MAINE

v.

DONALD F. RUTHERFORD

SAUFLEY, C.J.

[¶1]  In this appeal, we clarify the evidentiary foundation required for the admission of an otherwise hearsay statement as the adoptive admission of a defendant in a criminal trial.  Donald F. Rutherford appeals from a judgment of conviction of operating under the influence (Class D), 29-A M.R.S. § 2411(1-A)(A), (5) (2018), entered by the court (Kennebec County, *Marden, J.*) after a jury trial in which the court admitted, as an adoptive admission and over Rutherford's objection, the inculpatory statement of Rutherford's friend, who did not testify at trial.  Because silence alone is not enough, and there was no

---

* Although not available at oral argument, Justice Hjelm participated in the development of this opinion. *See* M.R. App. P. 12(a)(2) ("A qualified justice may participate in a decision even though not present at oral argument.").

2

other evidence that Rutherford adopted his friend's statement identifying him as the driver, we vacate the judgment and remand for further proceedings.[1]

## I. BACKGROUND

[¶2]   At about 11:15 p.m. on December 2, 2017, Gardiner Police Department officers responded to a call and found Rutherford and a friend standing near a vehicle that was in a ditch near the entrance to an apartment complex.  Rutherford was arrested at the scene and, after the administration of a breath test at the police department, was issued a uniform summons and complaint charging him with operating under the influence.  He entered a plea of not guilty.

[¶3]  During the jury trial held in September 2018, the officer who spoke with Rutherford at the scene of the accident testified, over Rutherford's hearsay objection, that when she asked Rutherford and his friend what had happened, Rutherford's friend said that Rutherford was not from the area and had missed the turn, thus indicating that Rutherford had been driving.  The court admitted the statement of the friend as an admission adopted by Rutherford, ruling that the statement was admissible as an opposing party's statement.  *See* M.R.

---

[1] Because we vacate the judgment, we do not reach Rutherford's additional arguments raised on appeal.

Evid. 801(d)(2)(B) (providing that a statement is not hearsay if "[t]he statement is offered against an opposing party and . . . [i]s one the party manifested that it adopted or believed to be true"). The friend did not testify and was not present at trial.

[¶4] The court also admitted—over the same objection—a prearrest video recording, with audio, from the officer's body-worn camera that included the friend's statement identifying Rutherford as the driver and also Rutherford's own response to law enforcement that he was the owner of the vehicle. Rutherford objected to the admission of the friend's statement a third time after consulting additional legal resources. He argued that he had not manifested adoption of the statement by merely standing next to his friend when she said he had missed the turn. The court reiterated its earlier rulings, finding—based on the officer's testimony and the video—that Rutherford had been standing two feet away from his friend when they were both being questioned, he had heard the question and answer, he had not disputed her representation that he was the driver, and he had cooperated fully in field sobriety tests thereafter.

[¶5] Rutherford did not testify, and when all evidence had been presented, he moved for a judgment of acquittal. *See* M.R.U. Crim. P. 29. He

4

argued, among other things, that there was no properly admitted evidence that could show beyond a reasonable doubt that Rutherford had been the driver. The court denied the motion for a judgment of acquittal.

[¶6]  The jury found Rutherford guilty.  The court sentenced Rutherford to forty-eight hours in jail and $650 in fines, surcharges, and assessments.  His license was suspended for 150 days.  Rutherford timely appealed from the judgment and moved to stay the execution of his sentence pending appeal—a motion that the court granted.

## II.  DISCUSSION

[¶7]  Rutherford contends that the statement of his friend was hearsay and did not constitute an admission by him that he was driving the car. Hearsay, which is a "statement that . . . [t]he declarant does not make while testifying at the current trial" and that is offered by a party "to prove the truth of the matter asserted in the statement," is generally inadmissible.  M.R. Evid. 801(c), 802.  A statement is not hearsay, however, if "[t]he statement is offered against an opposing party and . . . [i]s one the party manifested that it adopted or believed to be true."  M.R. Evid. 801(d)(2)(B).

[¶8]  When the State offers evidence as an adoptive admission in a criminal proceeding, the State bears the burden of proof "to show that an

adoption was intended." *State v. Cookson*, 657 A.2d 1154, 1157 (Me. 1995). If the defendant objects, the court must make a threshold determination whether "the State has introduced sufficient facts for the jury reasonably to conclude that the defendant adopted the admission of another." *Id.*; *see also State v. Marshall*, 491 A.2d 554, 558 (Me.), *cert. denied*, 474 U.S. 908 (1985). We examine the record that was presented to the trial court to review whether the defendant was present when the statement was made, heard and understood the statement, and manifested his adoption of it. *Cookson*, 657 A.2d at 1157. We review the court's decision on the adequacy of the foundation for an abuse of discretion, though we review underlying findings of fact for clear error. *State v. Williamson*, 2017 ME 108, ¶ 17, 163 A.3d 127.

[¶9] It is a critical principle in criminal proceedings that, because the "adoptive admission of a defendant charged with a crime is tantamount to a confession stripped of constitutional safeguards against self-incrimination," a criminal defendant's "mere presence when a statement is made is insufficient to support a finding of adoption." *Cookson*, 657 A.2d at 1157 (quotation marks omitted); *see* U.S. Const. amend. V; Me. Const. art. I, § 6.

[¶10] For instance, we held that the statement of a defendant's brother to a store employee about his plans was not an admission of the defendant

merely because she was present when her brother made the statement. *State v. McKenney*, 459 A.2d 1093, 1095, 1097 (Me. 1983). Similarly, when a trial court excluded a witness's testimony about a statement implicating the defendant that was made in one room while the defendant was in an adjoining bathroom, we affirmed the ruling because "the presiding justice could well have found that [the defendant] did not hear [the] remark" and therefore did not manifest his adoption of the statement as his own. *State v. Johnson*, 472 A.2d 1367, 1370-71 (Me. 1984).

[¶11] Applying these standards, we have held that the evidence offered to establish that a defendant adopted an admission was insufficient when the evidence showed that the defendant contemporaneously and vehemently denied the contents of the statement, *State v. Robinson*, 403 A.2d 1201, 1203 (Me. 1979); when the evidence showed that the statement was made in one conversation while the defendant was engaged in another, separate conversation, *Cookson*, 657 A.2d at 1157; and when the State lacked evidence that the defendant was present, heard and understood the statement, and manifested adoption of it, *State v. Marr*, 536 A.2d 1108, 1109-10 (Me. 1988). We also held that a statement was inadmissible when it was not possible to

identify which person in a conversation made the incriminating statement. *State v. Elwell*, 380 A.2d 1016, 1020 (Me. 1977).

[¶12] When we have upheld the admissibility of an adoptive admission in criminal proceedings, there has been specific evidence of the defendant's affirmative adoption. For instance, we upheld the admission of two codefendants' statements against each of them when they and others met with a friend at a motel room and had a conversation. *Marshall*, 491 A.2d at 556-57. One of the two defendants explained to the friend that a member of their group had gotten out of control and shot the murder victim; he added that the victim's "troubles were over." *Id.* at 557. After the friend suggested that the members of the group might turn themselves in, the other defendant picked up a rifle and said, "'[N]o one is going to take us in.'" *Id.* (alteration in original). The entire conversation was affirmed as admissible against each defendant because each defendant's admission was adopted by the other as part of their ongoing conversation. *Id.* at 557-58.

[¶13] We also affirmed the admissibility of statements as adoptive admissions when a defendant actively participated in a three-way conversation in a vehicle, contributing to the conversation and building on what others said, *State v. Kimball*, 424 A.2d 684, 687-88 (Me. 1981); when a defendant, in close

proximity to the declarant who was planning a robbery, participated in a coin toss to see who would carry the gun, helped make masks, and left with the declarant in the declarant's car with a gun in his possession, *State v. Anderson*, 409 A.2d 1290, 1298-99 & n.8 (Me. 1979); when a person leaving a building that had been set on fire said, "that was a dumb . . . thing to do," and the defendant replied, "that way they wouldn't be able to find any fingerprints," *State v. Blouin*, 384 A.2d 702, 704, 705-06 (Me. 1978) (quotation marks omitted); and when a man with a visible injury told his sister-in-law, referring to and in the presence of his girlfriend—the defendant—"Look what that [F'n] fool did to me," and the girlfriend "laughed and said she would do a better job next time," *State v. Anaya*, 456 A.2d 1255, 1265 (Me. 1983) (quotation marks omitted).

[¶14] We also considered a situation in which the adoptive admission offered by the State was made during questioning by law enforcement. *State v. Parker*, 461 A.2d 501, 502-03 (Me. 1983). There, however, the defendant explicitly stated, "I don't disagree with that," after the officer summarized the events that another person had reported. *Id.* (quotation marks omitted). We affirmed the admission of the statement in that case because of the defendant's

explicit adoption of the version of events that had been related by the officer. *Id.* at 503.

[¶15]  The key factor in each of those cases was an affirmative act or statement by the defendant adopting the speaker's statement.  Even in the one instance where the statement was not *followed* by conduct or words manifesting adoption, the admitted statement, "[N]o one is going to take us in," was made during a group conversation after the defendant had already explained how the murder victim had been shot and had said that the murder victim's "troubles were over."  *Marshall*, 491 A.2d at 557-58 (quotation marks omitted).

[¶16]  Taken together, these cases stand for the principle that the defendant must undertake an observable action, either through words or conduct, by which a reasonable person would understand that the defendant did, in fact, adopt the statement.  Although in matters not involving the constitutional right to remain silent, a person's silence may manifest acquiescence and adoption if the statement's context would naturally call for a reply, *see McKenney*, 459 A.2d at 1097 (citing the civil case of *Gerulis v. Viens*, 130 Me. 378, 382, 156 A. 378 (1931)),[2] silence in the presence of the declarant

---

[2] We did not in *McKenney* conclude that McKenney's silence when her brother made a statement to a shop owner manifested her adoption of his statement, and our reference to the standard applied

cannot alone create an adoptive admission by a criminal defendant, *see Cookson*, 657 A.2d at 1157.

[¶17] We now explicitly hold that, although a statement may be admissible as an admission of a party in a civil case if the statement would, in context, call for a reply, this standard does not apply in a criminal trial because of a defendant's constitutionally protected right to remain silent. We will not uphold the admission of "a confession stripped of constitutional safeguards against self-incrimination" based on the defendant's mere silence when the third party made the statement in the defendant's presence. *Cookson*, 657 A.2d at 1157 (quotation marks omitted).

[¶18] When, as here, the statement at issue was made during questioning by a law enforcement officer, the right to remain silent carries an additional role in determining the admissibility of a third party's statement as the adoptive admission of a criminal defendant. "The right to remain silent, unlike the right to counsel, attaches *before* the institution of formal adversary proceedings." *State v. Diaz*, 681 A.2d 466, 468 (Me. 1996) (quotation marks omitted). A person therefore has the right to remain silent when questioned by police even

---

in an earlier civil matter was potentially misleading dictum, as we clarify today. *State v. McKenney*, 459 A.2d 1093, 1097 (Me. 1983).

when the person has not been placed under arrest or read *Miranda* warnings. *See* U.S. Const. amend. V; Me. Const. art. I, § 6; *State v. Lovejoy*, 2014 ME 48, ¶¶ 22, 23 n.9, 89 A.3d 1066; *cf. State v. Figueroa*, 2016 ME 133, ¶ 18, 146 A.3d 427 (involving an affirmative waiver of the right to remain silent after the defendant was read *Miranda* warnings).

[¶19] In the matter before us, the State relies exclusively on Rutherford's silence as foundational evidence that the declarant's statements became Rutherford's. *Cf. Parker*, 461 A.2d at 502-03. At trial, the State argued that Rutherford had adopted the friend's statement as his own as part of a three-way conversation with the friend and the officer by stating that he owned the vehicle and that he had been drinking at his friend's place of employment. The State clarified at oral argument, however, that it *does not* contend that Rutherford manifested adoption by cooperating in answering questions regarding his sobriety and participating in field sobriety testing.[3] The State did not present to the trial court evidence of any other statement or conduct by which Rutherford asserted, suggested, or implied that his friend had correctly indicated that he had been driving. Accordingly, the State relies on Rutherford's

---

[3] Unfortunately, the State did not make that position clear to the trial court at any time before or after the court's ruling.

mere presence while his friend was speaking to argue that he manifested his adoption of the friend's statement.

[¶20] Rutherford had a right to remain silent when questioned by the officer. *See* U.S. Const. amend. V; Me. Const. art. I, § 6; *Lovejoy*, 2014 ME 48, ¶¶ 22, 23 n.9, 89 A.3d 1066; *Diaz*, 681 A.2d at 468. At the time of his friend's statement, Rutherford had not waived his right to remain silent. *Cf. Figueroa*, 2016 ME 133, ¶ 18, 146 A.3d 427. Accordingly, Rutherford's silence, which he had the right to maintain when his friend spoke, cannot be construed as an adoption of the friend's statement. Conduct or words manifesting adoption of the statement were required, and the State did not offer evidence of such conduct or words of adoption by Rutherford. The friend's statement should not have been admitted as an adoptive admission, *see* M.R. Evid. 801(d)(2)(B); it remained inadmissible hearsay, *see* M.R. Evid. 801(c), 802.

[¶21] We therefore vacate the judgment of conviction and remand the matter for further proceedings.

The entry is:

> Judgment vacated. Remanded for further proceedings.

Jeremy Pratt, Esq. (orally), and Ellen Simmons, Esq., Camden, for appellant Donald F. Rutherford

Maeghan Maloney, District Attorney, and Frayla Tarpinian, Asst. Dist. Atty. (orally), Prosecutorial District IV, Augusta, for appellee State of Maine

Kennebec County Unified Criminal Docket docket number CR-2017-2500
FOR CLERK REFERENCE ONLY